UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| TIMOTHY P. SMITH and | ) | Case No. 09-31465 |
| CONNIE SMITH | ) | Chapter 11 |
| Debtors | ) | |

**MEMORANDUM OPINION**

This case came before the Court for trial on August 24, 2009, on the Application Pursuant to 11 U.S.C. §§ 327(e) and 1107 For an Order Authorizing Debtors-In-Possession to Employ Attorneys (Doc. No. 26) and Motion to Pursue Counterclaim (Doc. No. 52) both filed by the debtors, the Motion to Dismiss Connie Smith's Case (Doc. No. 51), Precautionary Motion of Madison Capital Company, LLC to Modify the Automatic Stay to Institute Contempt Proceedings in the Eastern District Case and for Other Relief (Doc. No. 66), and the Motion to Modify the Automatic Stay to Enforce Liens on Stock in Certain Debtor-Owned Companies (Doc. No. 156) all filed by Madison Capital Company, LLC ("Madison Capital"), and the Sua Sponte Motion of the Court for the Debtors to Show Cause why this Chapter 11 Bankruptcy Case Should not be Dismissed, Converted to Chapter 7, or a Trustee Appointed. (Doc. No. 73). Both the debtors and Madison Capital appeared in person and by counsel at the trial. Community Trust Bank, Inc. ("CTB"), Drummond Coal Sales, Inc. ("Drummond"), and a representative from the United States Trustee's Office ("UST") also appeared at the trial. The Court, having heard the testimony and evidence presented at trial, and having considered the authorities submitted by the parties, concludes this Chapter 11 case should be dismissed. The Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

**I. FINDINGS OF FACT**

The Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on March 25, 2009. Mr. Smith formerly worked in the coal business, and owned and operated numerous mining entities, including American Mining West, LLC ("AMW"), American Mining & Manufacturing Corporation ("AMMC"), American Engineering & Construction Corporation ("AECC") and United States Coal Corporation ("USCC") (the "Smith Companies").

**Smith and Madison Capital**

Prior to the petition date, CTB made two (2) loans to the Smith Companies. To secure payment of the CTB debt, Mr. Smith, AMMC, USCC and AECC entered into a Security Agreement dated February 4, 2005, granting CTB a first-priority security interest in all the companies' assets. On June 1, 2006, CTB renewed the CTB debt. Mr. Smith, AMMC, AECC, USCC and American Mining & Manufacturing, LLC ("AMM, LLC") executed an Amended & Restated Loan Agreement, an Amended & Restated Term Note & Unconditional Guarantee, an Amended & Restated Revolving Note and Unconditional Guarantee, and an Amended & Restated Security Agreement. On September 29, 2006, CTB assigned to Madison Capital the CTB debt and all CTB's right, title and interest in and to the loan documents described above.

In September 2005, Mr. Smith requested that Madison Capital loan money to one of his companies for the purpose of acquiring a coal mine. On or about November 10, 2005, Madison Capital loaned AMW $3,750,000.00 to purchase a coal mine. Following the loan closing, the Smith Companies experienced severe cash flow problems.

On January 13, 2006 Madison Capital loaned AMW and additional $300,000.00 for "cash-related issues" and other operational expenses. On or about February 13, 2006, Madison

Capital refinanced the debt and loaned an additional $1,200,000.00 to the Smith Companies. Pursuant to this loan agreement, the Smith Companies owed Madison Capital $5,250,000.00.

After Madison Capital refinanced the debt and made the $1,200,000.00 loan, the Smith Companies continued to sustain cash loses and did not have sufficient cash flow to pay their operating expenses. The Smith Companies then offered Madison Capital an equity interest in the business in exchange for Madison Capital reducing the debt by approximately $2,300,000.00 and contributing an additional $500,000.00 in capital.

On May 30, 2006, Mr. Smith, the Smith Companies, Madison Capital and CTB entered into a Contribution and Company Interests Purchase Agreement dated May 30, 2006 (the "Contribution Agreement"). Pursuant to the Contribution Agreement:

> (a) the Smith Companies transferred their assets to a newly-formed entity called American Mining & Manufacturing, LLC ("AMM, LLC") in exchange for a 25% equity interest in AMM, LLC,
>
> (b) in exchange for a 75% equity interest in AMM, LLC, Madison Capital contributed $4,000,000 in capital, consisting of:
>
>> (i) Madison Capital transferred to AMM, LLC assets it had recently purchased from AMMC for $1,266,000.00 (from which Mr. Smith personally received $1 million after-tax dollars);
>>
>> (ii) Madison Capital contributed and additional $500,000.00 cash to AMM, LLC; and
>>
>> (iii) Madison Capital reduced the debt by $2,234,000; and
>
> (c) AMM, LLC and Mr. Smith entered into an Employment Agreement under which Mr. Smith was retained as Chief Executive Officer of AMM, LLC.

On June 19, 2006, Mr. Smith advised Madison Capital that AMM, LLC required an immediate infusion of at least another $2,314,500.00. In light of the large and persistent losses

3

incurred by the mines, Madison Capital declined to contribute additional capital to AMM, LLC. On July 11, 2006, AMM, LLC terminated Mr. Smith's employment.

On October 24, 2007 AMM, LLC filed a voluntary petition for relief under Chapter 7 in the United States Bankruptcy Court of the District of Delaware. The Chapter 7 Trustee abandoned all of AMM, LLC's potential claims against Mr. Smith to Madison Capital, which held a security interest in those claims. Madison Capital asserts that these breach of fiduciary duty claims have merit and that it is entitled to prosecute the AMM, LLC's claims against Mr. Smith.

### Eastern District Litigation

On February 7, 2007, Madison Capital commenced an action against Mr. Smith in the United States District Court for the Eastern District of Kentucky styled *Madison Capital Company, LLC v. Timothy P. Smith*, Case No. 07-27-ART (E.D. Ky. 2007) (the "Eastern District Case") to recover on the Amended & Restated Guarantees it had purchased from CTB. On March 16, 2007, Mr. Smith asserted counterclaims against Madison Capital based on Mr. Smith's allegation that he voluntarily loaned $366,000.00 to AMM, LLC following execution of the Contribution Agreement. On May 9, 2007, Mr. Smith and the Smith Companies asserted various claims against Madison Capital, including a fraud in the inducement count, a fraud by misrepresentation count, an estoppel count, a breach of duty of good faith and fair dealing count, and an unjust enrichment count (collectively the "Counterclaims").

On March 13, 2008, the Eastern District Court issued an order (the "March 13 Order") granting Madison Capital a summary judgment on the CTB guarantees and issued an attachment on all the property of Mr. Smith and prohibiting Mr. Smith "from transferring, encumbering, concealing or otherwise disposing of any of his property or assets." On August 28, 2008, Madison Capital

obtained a final judgment on its guarantee claim against Mr. Smith in the amount of $1,200,000.00 (the "Eastern District Judgment"). The Eastern District Judgment also awarded Madison Capital interest, default interest, late fees, attorneys' fees and costs of collection incurred in attempting to collect the judgment. Mr. Smith did not appeal the Eastern District Judgment.

On August 25, 2008, Eastern District Court entered an order directing Mr. Smith to obtain new counsel to represent him with respect to the Counterclaims. That order further provided that in the event that Mr. Smith failed to obtain new counsel, the court would enter summary judgment against him on the Counterclaims. The Eastern District Court, on September 8, 2008, extended the time to October 17, 2008, for Mr. Smith to obtain counsel.

On September 19, 2008, the Clerk of the Eastern District Court issued an Order of Garnishment (the "Garnishment Order") that was served on Magic Coal Mining Company ("Magic Coal"), one of Mr. Smith's companies, and "restrained [Magic Coal] from paying to [Mr. Smith] or to anyone for him, money or property . . . belonging to him or in which he has any interest." The Garnishment Order also ordered Magic Coal to "continuously withhold and safely keep all said nonexempt assets of [Mr. Smith]." On October 1, 2008, the Eastern District Court issued an Order (the "October 1 Order") stating that Mr. Smith "shall not attempt to transfer, move or conceal in any way, any real or personal property in an effort to avoid satisfaction of [Madison Capital's] judgment."

On October 8, 2008, CTB erroneously issued approximately $163,000.00 in cashier's checks to Magic Coal. Mr. Smith did not use these funds to pay Magic Coals creditors, but instead made a direct disbursement to himself by indorsing the checks over to Mr. Charles Greenwell ("Greenwell"), for the purpose of representing Mr. Smith in the Eastern District Litigation. This

distribution violated Mr. Smith's fiduciary duty to the creditors of Magic Coal and directly violated the March 13 Order and the September 19 Garnishment Order entered by the Eastern District Court. Both CTB and Madison Capital seek to recover the $163,000.00 paid to Greenwell.

On March 6, 2009, the Eastern District Court issued a ruling granting Madison Capital a summary judgment on all the allegations in the Counterclaims, except with respect to the fraud claims. The Eastern District Court set the fraud claims for jury trial to begin on June 2, 2009.

## 2008 Bankruptcy

On June 10, 2008, Mr. Smith filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. *In re Smith, Case No.* 08-32405 (2008). In Mr. Smith's sworn Schedule B of personal property, he failed to list the Counterclaims against Madison Capital that had been pending for over a year in the Eastern District. While Mr. Smith listed the Smith Companies as assets, he swore that they possessed no value, notwithstanding the fact they were joint claimants in the Counterclaims against Madison Capital in the Eastern District Case. When asked why he failed to list the Counterclaims, Mr. Smith testified that he intentionally failed to list the Counterclaims because he had decided to "move on" with his life. The Bankruptcy Court dismissed the 2008 bankruptcy case on July 22, 2008, due to Mr. Smith's failure to submit documents to the Chapter 7 Trustee as ordered.

## Western District Litigation

In addition to the litigation in the Eastern District, on July 21, 2008, Madison Capital also initiated litigation against both Mr. Smith and Mrs. Smith in the United States District Court for the Western District of Kentucky styled *Madison Capital Co., LLC v. Smith*, No. 3:08CV-382-H (W. D. Ky. 2008) (the "Western District Case") to recover on an allegedly fraudulent transfer from Mr.

Smith to Mrs. Smith.  On March 18, 2009, Western District Court awarded Madison Capital a monetary judgement against Mrs. Smith in the amount of $1,266,000.00 plus interest (the "Western District Judgement").  The Western District Judgment voided Mr. Smith's transfer of $1,266,000.00 to Mrs. Smith pursuant to Ky. Rev. Stat. § 378.020 and entered a judgement against Mrs. Smith in that amount.  The Western District Court also denied Mrs. Smith's motion to stay execution of the Western District Judgement.  Mrs. Smith testified that the denial of the motion to stay execution precipitated the filing of this bankruptcy case.

## 2009 Bankruptcy

The Smiths filed the case currently before the Court on March 25, 2009.  Unlike the 2008 case, the debtors listed the Counterclaims in Schedule B, and indicated they possessed a value of $10,000,000.00.  On April 21, 2009, the Smiths moved to employ Greenwell as special counsel pursuant to 11 U.S.C. § 327(e).  The Smiths proposed paying Greenwell on a 40% contingency fee basis.  If approved, Greenwell would represent the debtors in both the Eastern District Case and the Western District Case.  While the UST originally objected to the application to employ Greenwell, the UST withdrew its objection after reaching an accommodation with the debtors with regard to Greenwell's employment.  Madison Capital also opposed the debtors' employment of Greenwell, arguing that the debtors failed to disclosed the compensation previously paid to Greenwell, failed to disclosed the "questionable source" of the compensation (the CTB cashier's checks to Magic Coal), and that Greenwell possessed a conflict of interest due to his simultaneous representation of Mr. Smith and the Smith Companies.  CTB filed a limited objection to the application to employ Greenwell, stating that it would be seeking recovery of the funds erroneously paid to Magic Coal, which Mr. Smith converted to his own personal use by indorsing over to Greenwell.

7

On May 18, 2009, the debtors filed an extensive Supplemental Disclosure, in support of their application to employ. According to Exhibit 14 of that Supplement, a confirmation letter from Greenwell to the debtors, Greenwell would continue with representation based on a contingency basis of 40% of total recovery. That letter provided in part that "[p]reviously paid hourly fees will be credited against the 40% contingency provided that in the event of an inadequate recovery, our total fees plus the contingency shall in no event be less than fees determined based upon our hours invested times the stated hourly rates plus any unpaid costs." This language is somewhat puzzling in that while it states the employment will be on a contingency basis, in no event would the fees be less than the hours spent multiplied by the hourly rate. In other words, the standard lodestar formula would establish a minimum amount of compensation, notwithstanding the results of the litigation. This language conforms with an unsigned employment contract dated April 2009, Doc. No. 43, but contradicts the language of another unsigned employment contract also dated April 2009, Doc. No. 26, which states that if "nothing is recovered on the claim, our attorneys are not due a fee for their services but may have reimbursement for advanced expenses." The Court has never been presented with a signed employment contract.

On May 4, 2009, Madison Capital filed a motion to dismiss Mrs. Smith's bankruptcy case. Madison Capital alleged that Mrs. Smith filed her case in bad faith, that she had no creditors other than Madison Capital, no business, no income, no employees, and no ability to reorganize or confirm a Chapter 11 plan. Drummond filed an objection to the motion to dismiss Mrs. Smith. Drummond asserts a claim against Mrs. Smith, resulting from the Western District Court's finding of a fraudulent transfer by Mr. Smith to Mrs. Smith. The Smiths did not file a response to the motion to dismiss.

8

On May 4, 2009, the Smiths moved for authority to pursue the $10,000,000.00 Counterclaims in the Eastern District Case. According to the debtors, the "continued pursuit of recovery under the Counterclaim is necessary and in the best interests of the estate and its creditors, excluding, obviously, Madison or any Madison-related entities that may assert a claim against this estate." Madison Capital opposed the motion, arguing that the Counterclaim should be considered only after resolution of the application to employ Greenwell, after the resolution of the motion to dismiss Mrs. Smith, and after the resolution of the Court's order to show cause why this case should not be dismissed or converted. Madison Capital also argued that the Counterclaim was of little value to the bankruptcy estate, in that any recovery would be divided between Greenwell, should he be employed, and the Smith Companies. Moreover, any recovery by Mr. Smith from Madison Capital would be subject to Madison Capital's setoff rights under 11 U.S.C. § 553. In addition to the $1,200,000.00 judgments against Mr. Smith and Mrs. Smith, Madison Capital still holds the AMM, LLC claims against Mr. Smith. Madison Capital valued these AMM, LLC claims at over $1,000,000.00.

On May 18, 2009, Madison Capital sought to modify the automatic stay so that it could institute contempt proceedings against Mr. Smith in the Eastern District Case. Madison Capital alleged that Mr. Smith's actions, with respect to the cashier's checks issued by CTB to Magic Coal, violated several orders entered in the Eastern District Case. Specifically, Mr. Smith's indorsement over and Greenwell's acceptance of the $163,000.00 in cashier's checks violated the March 11, October 1, and Garnishment Orders entered by the Eastern District Court. Madison Capital also sought relief, if necessary, to pursue Greenwell, to recover the funds.

9

**Trial**

As stated above, the Court held an evidentiary hearing on the debtors' application to employ Greenwell and motion to pursue Counterclaims, on Madison Capital's motion to dismiss Mrs. Smith's bankruptcy case, motion to institute contempt proceedings, and on the Court's *sua sponte* motion for the debtors to show cause why this case should not be dismissed, converted to Chapter 7, or a Trustee Appointed.

At the trial, Mrs. Smith testified that she filed this bankruptcy case because of the judgment entered in favor of Madison Capital in the Western District Case, and the denial of the motion to stay execution of that judgment. She stated she did not review her sworn bankruptcy schedules or Statement of Financial Affairs prior to the filing of this case, and that she was not sure what she hoped to accomplish with this bankruptcy. Mrs. Smith testified that she has no creditors other than Madison Capital, and disputed Drummond's claim against her. Mrs. Smith was not employed on the petition date, but stated she was seeking employment. As of the trial, however, she remained unemployed with Mr. Smith being her only source of funds. Mrs. Smith testified that during the first few months of this bankruptcy case, the debtors' expenses exceeded their income. Only recently has their income moderately exceeded their expenses.

Mrs. Smith testified that she owned Taylor Motor Company ("Taylor Motor"), which she formed in 2007. Taylor Motor owns several pieces of equipment, but said equipment is non-revenue generating. Taylor Motor has "informally" leased the equipment in the past, but these rentals have never generated income. Mrs. Smith testified she had not taken any efforts to sell or lease the equipment since the inception of this bankruptcy case. Mrs. Smith also testified that she owned two pieces of unencumbered residential real property. She and Mr. Smith live in one as their residence,

while Rita Howard, Mrs. Smith's ex-mother-in-law, lives in the other. Ms. Howard does not pay rent or otherwise compensate Mrs. Smith for the use of the property. As with the Taylor Motor equipment, this property is not currently revenue generating and Mrs. Smith has made no efforts to sell or lease this real property.

Finally, with respect to the Counterclaims, Mrs. Smith testified she owns no interest in the Counterclaims asserted against Madison Capital, even though the $366,000.00 in funds loaned to AMM, LLC came from her sole bank account. Mr. Smith has included these loaned funds in his Counterclaims against Madison Capital. Mrs. Smith testified that any plan of reorganization will hinge on the Counterclaims against Madison Capital.

Mr. Smith also testified at the trial. He is employed at E.ON U.S., making approximately $96,000.00 a year. He makes additional income refereeing football games at $1,300.00 a game for ten to thirteen games a year. Mr. Smith testified that while his sworn bankruptcy schedules contained several inaccuracies, he has made efforts to correct the schedules since the filing of the bankruptcy petition.

With respect to the Counterclaims, he testified that he did not personally contribute any hard assets to the business enterprise with Madison Capital. The Smith Companies actually contributed the assets, and if the Counterclaims succeed, the Smith Companies would be entitled to some portion of any damages. Despite the fact that a portion of the proceeds would belong to the Smith Companies, Mr. Smith testified he would use all the proceeds from the Counterclaims to pay off his creditors, rather than the creditors of the Smith Companies. Mr. Smith acknowledged that all but two counts of the Counterclaims have been dismissed. Furthermore, even though the Counterclaims were, for the most part, based upon allegations of fraud, Mr. Smith could not identify any false oral

or written representations by Madison Capital.  Indeed, in several instances in prior depositions, Mr. Smith offered sworn testimony that would seem to "torpedo" any claims of fraud that he might possess.

Greenwell also testified at the trial.  He stated that he held a $30,000.00 claim against the bankruptcy estate, but agreed to waive that claim in order to continue his representation of the debtors.  Greenwell further stated, however, that if he was forced to return the $163,000.00 retainer paid from the Magic Coal funds, he would <u>not</u> be willing to waive that claim as well.  Greenwell disputed Madison Capital's assertion that he had a conflict of interest in the Eastern District Case, even though he would be representing both the Smith Companies and the bankruptcy estate.  He stated these parties would have a "common interest," and that they could split up the Counterclaim proceeds if successful.  On cross examination, Greenwell admitted he had no written employment agreement with the Smith Companies.  When asked to explain the nature of the Counterclaims and to explain what damages Mr. Smith personally suffered, Greenwell refused to answer, citing work product.

## II. DISCUSSION

Madison Capital moved to dismiss Connie Smith's bankruptcy case, while the Court issued an order for both debtors to show cause why the entire bankruptcy case should not be dismissed or converted.  11 U.S.C. § 1112(b)(1) provides:

> "Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause."

11 U.S.C. § 1112(b)(1).  The Bankruptcy Code goes on to list a non-exclusive list of reasons that may constitute "cause" for dismissal or conversion, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

There can be no question that cause exists to dismiss or convert.  First, with respect to Mrs. Smith, the evidence presented is clear that she is unable to reorganize.  As stated above, Mrs. Smith is not employed and earns no monthly income from which she could fund a plan of reorganization.  Mrs. Smith testified that she was seeking employment, but as of the trial in this matter, she has been unable to find employment.

While it is true that Mrs. Smith owns Taylor Motor, that entity does not generate income for Mrs. Smith.  While Taylor Motor owned equipment, it is equipment that has never been leased in a traditional sense.  Mrs. Smith testified that Taylor Motor would "informally" lease the equipment, but that Taylor Motor had never received any compensation from the equipment rental.  Mrs. Smith further testified that she has taken no efforts to sell or lease the equipment during the pendency of this bankruptcy case.  Likewise, Mrs. Smith also owns two pieces of unencumbered residential real property.  Like the Taylor Motor equipment, these properties are not revenue generating and Mrs. Smith has taken no actions to sell or lease this property during the pendency of this bankruptcy case.  Considering her lack of employment and non-revenue generating assets, there certainly is an

"absence of a reasonable likelihood of rehabilitation."

Mrs. Smith's case can also be dismissed at it meets the criteria for a finding of a bad faith filing. The lack of good faith in filing a Chapter 11 petition constitutes cause for dismissal. *In re Trident Associates Ltd. Partnership*, 52 F.3d 127, 130(6th Cir. 1995); *In re Charfoos*, 979 F.2d 390, 392 (6th Cir. 1992). Good faith is determined using a "totality of the circumstances" test. *In re Okoreeh-Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988); *In re Barrett*, 964 F.2d 588, 591 (6th Cir. 1992). With respect to good faith, the Sixth Circuit has set forth the following guidelines a court should consider when determining if a debtor has acted in good faith: (1) the debtor has one asset; (2) the pre-petition conduct of the debtor has been improper; (3) there are only a few unsecured creditors; (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; (5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; (6) the filing of the petition effectively allows the debtor to evade court orders; (7) the debtor has no ongoing business or employees; and (8) the lack of possibility of reorganization. *Trident Assocs. Ltd. P'ship,* 52 F.3d at 131.

Several of these factors are present here. While Mrs. Smith has more than one asset, her assets are severely limited, and they are not revenue generating. The Western District Court held that Mrs. Smith to be the recipient of a fraudulent transfer from Mr. Smith. She testified that she has only one creditor, Madison Capital, or at most two, if Drummond prevails in its argument that it is also a creditor of Mrs. Smith.[1] Mrs. Smith testified that she filed this case only after the

---

[1] As it is not necessary to this ruling, this Court takes no position on Drummond's argument that it is also a creditor of Mrs. Smith.

Western District Court denied her motion to stay execution of the Western District judgment. Mrs. Smith has no on-going business or employees. Most importantly, and as stated above, she has no ability to reorganize. She has no employment and no income or cash flow. Without something of this nature, the Court cannot imagine how Mrs. Smith could propose a confirmable plan of reorganization. While Drummond and Mrs. Smith are correct in that Mrs. Smith could file a liquidating plan, a liquidating plan is not a reorganization. Moreover, considering the administrative expenses, a liquidating plan of the limited assets would not provide Mrs. Smith's bankruptcy estate any significant recovery.

The Court now turns to whether Mr. Smith's case should be dismissed or converted. While no party requested the dismissal of Mr. Smith's case, the Court, *sua sponte*, issued an order for both debtors to show cause why the entire case should not be dismissed or converted to Chapter 7. As with Mrs. Smith, the Court finds ample cause to dismiss or convert Mr. Smith's case as well. While Mr. Smith is employed, many of the debtors' monthly operating reports showed that the monthly expenses exceeded the debtors' monthly income. Considering the income to expense ratio, which does not consider plan payments, it does not appear likely that Mr. Smith could propose a feasible, confirmable plan of reorganization.

The Court now turns to the Counterclaims. As both debtors would agree, any successful plan of reorganization would hinge upon a successful outcome to the Counterclaims. The Counterclaims are by far the most valuable asset of the debtors, but they are also by far the most speculative. Mrs. Smith has no interest in the Counterclaims, while Mr. Smith's connection is tenuous as he admitted he made no personal investment in the business enterprise with Madison Capital. Moreover, neither Mr. Smith nor Greenwell, could/would explain how Mr. Smith arrived at the $10,000,000.00 value

given for the Counterclaims.  As stated above, the Eastern District Court dismissed all but two counts of the Counterclaims.  Both of those counts were premised upon allegations of fraud.  Mr. Smith, by his own testimony, admitted there were no oral or written representations made by Madison Capital outside the signed documents, and that the documents contained an integration clause.  Finally, the Counterclaims are dependent upon the approval of the employment of Greenwell.  Based upon the circumstances surrounding the Magic Coal funds, the possible disgorgement of the $163,000.00 to either Madison Capital or CTB, and Greenwell's stated position that he would not waive this possible claim, the Court could not approve the bankruptcy estate employing Greenwell as special counsel.

Moreover, even if the Counterclaims are completely successful, it is not at all clear that there would be sufficient proceeds to fund a plan.  After subtracting Greenwell's 40% contingency, any proceeds would still have to be split between Smith and the Smith Companies.  Despite Mr. Smith's testimony that he would disregard his fiduciary duties to these companies, some portion of these funds must be diverted to the Smith Companies and their creditors.  There is also the question of Madison Capital's rights with regard to setoff, which, if successful, could very well exceed the amount of any recovery from the Counterclaims.  Considering all of these factors as a whole, the Court does not believe the debtors could fund a plan of reorganization based for the most part upon the Counterclaims.

Cause also exists to dismiss or convert Mr. Smith due to his "habit" of not being truthful or providing full disclosure to the Court.  The Court listed several instances above where Mr. Smith admitted to inaccurate sworn statements, and admitted to erroneous sworn schedules.  During the course of the trial, Mr. Smith repeatedly contradicted earlier sworn testimony.  At one point during

the trial, after being caught in a contradiction, Mr. Smith "withdrew" a conflicting portion of his testimony given at his 341 meeting of creditors. His sworn schedules in this, as well as the 2008 bankruptcy case, contained numerous omissions and errors. For instance, in his previous bankruptcy case, Mr. Smith completely failed to list or disclose to the Chapter 7 Trustee his biggest asset, the $10,000,000.00 Counterclaims against Madison Capital. As reason for not disclosing this asset, Mr. Smith simply stated that wanted to "move on" with his life. Debtors do not get to decide which assets to list. In his current bankruptcy case, he stated that he owned several companies, but that these companies had zero value. He later admitted that the companies did have value, in that they were also plaintiffs in the $10,000,000.00 Counterclaims against Madison Capital. It was not until August 18, 2009, over four months after the filing of this bankruptcy petition, that the debtors filed an amendment to reflect the companies possessed value.

Mr. Smith directly misrepresented the truth to the Court when he testified that Magic Coal had no creditors when he caused it to make a distribution to himself for the purpose of paying Greenwell. Claims, of which Mr. Smith had knowledge, clearly establish that Magic Coal did have creditors that should have been paid prior to any personal distribution to Mr. Smith. Factual misrepresentations and omissions on bankruptcy schedules indicate a lack of good faith and constitute cause for dismissal or conversion of a debtor's bankruptcy case. *In re Charfoos*, 979 F.2d 390, 394 (6th Cir. 1992).

Along these same lines, cause to dismiss or convert also exists due to Mr. Smith's flagrant disregard of his fiduciary duties. The record in this case is replete with evidence of Mr. Smith casually disregarding his fiduciary duties with respect to the companies he owned. In addition to the Magic Coal distribution mentioned above, Mr. Smith repeatedly failed to file tax returns for his

17

companies, failed to keep sufficient corporate records, and generally failed to act as a fiduciary with respect to his companies. Mr. Smith evidenced a blatant disregard for corporate formalities, often treating his companies assets as his personal assets. For example, even though a portion of the Counterclaims belong to the Smith Companies, Mr. Smith expressly testified that he would use any Counterclaims proceeds for his personal use, notwithstanding the fact that the Smith Companies' possessed unpaid creditors. Such blatant disregard of a fiduciary status, precludes Mr. Smith from acting as a fiduciary for the bankruptcy estate.

Having found sufficient cause to dismiss or convert, the Court turns to the issue of whether it should convert this case to Chapter 7 or simply dismiss it. As stated above, 11 U.S.C. § 1112(b)(1) states that with a finding of cause, the Court shall dismiss or convert, whichever is in the best interests of creditors and the estate. While it is certainly not bound by the desires of the parties, the debtors strenuously opposed the appointment of a trustee. Madison Capital, by its own motion, sought the dismissal of Mrs. Smith's case, and expressed to the Court that it sought to avoid the administrative expense of a Chapter 7 proceeding. Conversion to Chapter 7 would necessitate the appointment of a Chapter 7 trustee. This would immediately add a level of administrative expense to a case that is already administratively insolvent. After the appointment of the trustee, the trustee would need to hire counsel, special counsel, an accountant, and possibly an auctioneer. Each of these entities would in turn drain away what little value would go to the debtors' limited creditors. While there are some assets, excluding the Counterclaims, the value of these assets do not exceed the claims of Madison Capital alone. Furthermore, with respect to the Counterclaims, the Court has already discussed that the Counterclaims' prospects are somewhat dim, and even if successful, the amount of recovery for the bankruptcy estate could be marginal.

In addition to the administrative cost, conversion of the case would necessitate an additional delay. The appointment of a trustee, the hiring of trustee's counsel, and the investigation of the case all would delay the administration of the case. Such delay is not in the interests of the debtors, or their creditors. Before the filing of this case, the Counterclaims were set for trial, and the Court has no reason to believe a new trial date would not be quickly set.

### III. CONCLUSION

While the factual circumstances surrounding this case are somewhat complex, the analysis of how to proceed is relatively simple. This Court finds more than ample cause to convert or dismiss this bankruptcy case. In addition to a finding of bad faith on both debtors part, it is readily apparent to this Court that these debtors cannot reorganize or propose a confirmable plan of reorganization. Any reorganization is completely dependent upon the Counterclaims, and the Counterclaims value is very suspect. Once deciding to dismiss or convert, the question as to which is in the best interest of the creditors and the estate is also relatively simple. Adding a trustee, and the likely numerous trustee employed professionals, makes an already administratively insolvent case even more insolvent. The limited assets, the administrative cost associated with the appointment of a trustee, and the attendant delay with the appointment of a trustee all cause the Court to believe that dismissal rather than conversion is in the best interests of the creditors and the bankruptcy estate. For the reasons set forth above, an order dismissing this case will be entered this same date.

David T. Stosberg
United States Bankruptcy Judge

Dated: October 26, 2009

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| TIMOTHY P. SMITH and | ) | Case No. 09-31465 |
| CONNIE SMITH | ) | Chapter 11 |
| Debtor(s). | ) | |

**ORDER**

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the above-styled case is hereby **DISMISSED** and the debtors are barred from re-filing a petition under Title 11 until October 31, 2012. This is a final and appealable order and there is no just reason for delay.

David T. Stosberg
United States Bankruptcy Judge

Dated: October 26, 2009